NUMBER 13-99-243-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


RAY CRAIN
, Appellant,


v.



CANDICE C. SMITH AND 

LAMM & SMITH, P.C.
, Appellees.

___________________________________________________________________


On appeal from the 165th District Court


of Harris County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey, and Yañez 


Opinion by Justice Dorsey



 This is an appeal of a summary judgment. Ray Crain, appellant, prepared and
recorded mechanic's and materialmen's liens for his client, Airtron, Inc. Crain is not
an attorney or a licensed real estate broker. The defendants in the underlying suit,
appellees here, attorney Candice C. Smith (Smith) and Lamm & Smith, P.C. (the law
firm), represented the owner of the property upon which Airtron placed the liens. 
Smith began investigating Crain and the services he provided to Airtron. Upon
discovering that Crain prepared and recorded the lien on behalf of Airtron, Smith did
two things.

 First, she spoke with Jeff Lehmann, the Chair of the Unauthorized Practice of
Law Committee of the State Bar of Texas, and reported what she had discovered
about Crain and her conclusion that Crain was practicing law without a license in
Texas. Next, she wrote a letter to Mr. T. Lee Ramsey, Jr., an attorney who
represented Airtron. In this letter, she advised Mr. Ramsey of what she had
discovered about Crain, and that she had spoken with Lehmann at the Committee, and
that charges were pending against Crain for the unauthorized practice of law. Also in
the letter, Smith demanded that Ramsey's client, Airtron, pay her client's damages
resulting from the filing of the lien.

 Crain filed suit against Smith, the law firm and Lehmann, alleging libel and
slander. Lehmann was eventually dismissed, as summary judgment that Crain take
nothing against him was granted in his favor. Crain amended his cause of action to
include claims for fraud, negligence, gross negligence, civil conspiracy, tortious
interference with actual and/or prospective contractual relationships, tortious
interference with actual and/or prospective business relationships, and punitive
damages. Still, the facts upon which he bases all causes of action remain the same
as they relate to Smith and the law firm. He complains of (1) the phone call to the
Unauthorized Practice of Law Committee Chair and (2) the letter to Airtron's counsel.

 Smith and the law firm moved for summary judgment on grounds that as to all
causes of action pled by Crain: (1) the oral statements that Smith made to Lehmann
when she called to report Crain's suspected unauthorized practice of law cannot form
the basis of tort liability because of the immunity bestowed by Texas Government
Code § 81.106, and (2) the written statements that Smith made to Airtron's attorney
are privileged as communications made in the course of a judicial proceeding. Smith's
summary judgment evidence consisted of her own affidavit and the assertions of fact
made by Crain in his amended petition.

Standard of Review


 We review the granting of summary judgment to determine whether the
summary judgment proof establishes as a matter of law that there is no genuine issue
of material fact as to one or more of the essential elements of the plaintiff's cause of
action or whether the defendant has established all elements of his affirmative
defense. Walker v. Harris, 924 S.W.2d 375, 377 (Tex.1996); Gibbs v. General
Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Cantu v. Holiday Inns, Inc., 910
S.W.2d 113, 114­15 (Tex. App.--Corpus Christi 1995, writ denied). In deciding the
motion for summary judgment, all evidence favorable to the non-movant will be taken
as true and all reasonable inferences must be indulged in favor of the non-movant. 
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A
defendant moving for summary judgment on an affirmative defense has the burden to
conclusively establish that defense. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d
529, 530 (Tex. 1997).

 Here the defendants/appellees are relying on the affirmative defense of absolute
privilege; that is, regardless of the falsity of their statements or their malice in uttering
them, they will not support a cause of action. Because privilege is a defense,
appellees had the burden to establish it as a matter of law.

 Both of the communications made the subject of this action--the complaint to
the chairman of the Unauthorized Practice of Law Committee and the letter to Crain's
client--are claimed to be protected by the same absolute privilege in that they were
both made in the course of a judicial proceeding.

Immunity for Reporting to Unauthorized Practice of Law Committee


 Section 81.106 of the government code provides:

 (a) The unauthorized practice of law committee, any member of the
committee, or any person to whom the committee has delegated
authority and who is assisting the committee is not liable for any
damages for an act or omission in the course of the official duties of the
committee.

 

 (b) A complainant or a witness in a proceeding before the committee or
before a person to whom the committee has delegated authority and who
is assisting the committee has the same immunity that a complainant or
witness has in a judicial proceeding.


Tex. Gov't Code Ann. § 81.106 (Vernon 1997) (emphasis added). 

 The question then becomes "what immunity does a complainant or witness have
in a judicial proceeding?"

 The first Texas Supreme court case to adopt the privilege was Runge v.
Franklin, 10 S.W. 721 (Tex. 1889), in which the plaintiff complained he had been
libeled by allegations made in a petition filed in court seeking an injunction, the
allegations later being publicized by a newspaper. The court examined English and
American cases and held that no cause of action for libel could be predicated upon
allegations contained in pleadings, no matter how false or malicious. 

 That rule of absolute immunity for libel was applied to complaints made to
public bodies that had judicial like functions. In Aransas Harbor Terminal R. Co. v.
Taber, 235 S.W. 841 (Tex. Com. App. 1921) libelous statements were made in a
letter to the Texas Railroad Commission. The court held that the commission
performed judicial functions: "The power to hear complaints and to investigate them,
to summons and compel the attendance of witnesses, to compel persons to testify in
transactions being investigated, and the power to render judgment in the matters being
investigated are expressly provided by these statutes. What more can any judicial
body do?" Id. at 842. "That communications made in the course of a judicial
proceeding are absolutely privileged is no longer a debatable question in this state." 
Id. at 843 (citing Runge v. Franklin, 72 Tex. 585, 10 SW 721). The court held the
letter to the commission was absolutely privileged and no action for libel would lie.

 Similarly, a document filed with the Board of Insurance Commissioners,
"whether true or false, real or forged," was absolutely privileged, and could not
support an action for libel. Reagan v. Guardian Life Ins. Co., 166 S.W.2d 909 (Tex.
1942). The court said that this rule of privilege "is not founded on the theory that the
communications furnish any defense, but on the fact that the law allows absolute
privilege or immunity on account of the occasion upon which the communication is
made. Id. at 913. The court construes Aransas Harbor Terminal R. Co. to hold that
"communications made to such a body stand on the same footing as regards libel as
do communications made in a court of justice." That is, absolutely privileged. 
Reagan, 166 S.W.2d at 912.

 We hold the communications made in this case to the Unauthorized Practice of
Law Committee through its members or chairperson are absolutely privileged, and
appellees are not liable for those communications, regardless of their content.

Written Statements Contained in Letter to T. Lee Ramsey


 The second communication that Crain complains of is Smith's letter to T. Lee
Ramsey, the attorney for Airtron, Inc., which was Crain's customer for whom he
allegedly filed the liens. This letter stated, in relevant part:

 Dear Mr. Ramsey:


 As you are aware, I represent . . . the owner of the . . . property
[upon which the liens were placed]. Enclosed, for your easy reference,
is a copy of the Lien Affidavit and Claim recorded in the Real Property
Records of Harris County, Texas, on behalf of your client, Airtron, Inc.,
claiming a mechanic's and materialman's lien against my client's property
. . . .


 Recently, I have done some investigation into Mr. Ray Crain, his
mechanic's and materialman's lien business and Mr. Michael R. Davis. 
I have spoken with Mr. Jeff Lehmann, the Chair of the Unauthorized
Practice of Law Committee, concerning same. Mr. Crain is not an
attorney and he is not licensed to practice law in the state of Texas. Mr.
Michael R. Davis is a licensed attorney. He, however, does not practice
law in Houston. He is currently an attorney with a department of the
State of Texas. Mr. Crain does not employ Mr. Davis, nor does Mr.
Davis employ Mr. Crain. They do not office together. As shown by the
enclosed letter, Mr. Davis does not type or sign the statutory notices
forwarded under his letterhead. His letters are typed and signed by an
employee of Mr. Crain's. Mr. Crain pays Mr. Davis a minimal fee to use
his letterhead and this notice.


 The "practice of law" is defined in Section 81.101 of the
Government Code of the State of Texas. This statute makes it illegal to
practice law without a license. Pursuant to Section 83.001 of the
Government code of the State of Texas, only an attorney licensed in this
state or a licensed real estate broker or salesman can receive
compensation for preparation of an instrument effecting title to real
property. An affidavit claiming a mechanic's and materialman's lien that
is recorded in the county where the property is located is clearly an
instrument that effects title to real property.


 As previously stated, Ray Crain is not a licensed attorney nor is he
a real estate broker, and yet he prepared and signed the enclosed lien
affidavit on behalf of your client. As such, Mr. Crain is practicing law
without a license and is committing an illegal act. Any act taken by a
person who is not an attorney and which act constitutes an unauthorized
practice of law is void and of no effect, Globe Leasing, Inc. v. Engine
Supply & Machine Serv., 437 S.W.2d 43 (Tex. Civ. App.--Houston 1969,
no writ). As such, the lien affidavit recorded on behalf of your client is
void and of no effect. Please contact Mr. Lehmann at [number] should
you wish to discuss unauthorized practice of law and the effect of same. 
The Unauthorized Practice of Law Committee currently has charges
pending against Mr. Crain which should be heard in the near future.


 Based upon the above, demand is hereby made that your client,
Airtron, Inc., immediately execute and return the enclosed release. 
Failure to do so within ten (10) days of the date of this letter shall result
in my client filing suit against your client in connection with same.


 . . . [A]s a result of your client's recording the lien affidavit and
refusing to release same, my client has incurred attorney fees in
connection with same in the approximate amount of $1,500.00. 
Demand is hereby made upon your client, Airtron, Inc., for the immediate
payment of the above referenced damages which total $15,233.00. 
Please have your client forward payment of same along with the
executed release. Failure to do so within ten (10) days of the date of this
letter, shall result in my client filing suit to recover payment of said
damages.


 Smith contends that the letter is a communication made in the due course of a
judicial proceeding and is absolutely privileged. 

 "Any communication made or published during the course of a judicial
proceeding is absolutely privileged; that is, no action will lie to recompense any injury
which they may cause." James v. Brown, 637 S.W.2d 914, 916­17 (Tex. 1982). 
This privilege has been held by several courts to include communications by counsel
in which the alleged wrongs suffered by the client are detailed. See e.g. Russell v.
Clark, 620 S.W.2d 865 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.); Thomas v.
Bracey, 940 S.W.2d 340 (Tex. App.--San Antonio 1997, no writ); see also Helfand v.
Coane, No. 12 S.W.3d 152 (Tex. App.--Houston [1st Dist.] 2000, no pet. h.). The
rationale is largely that of the absolute privilege that attaches to allegations in a
petition filed in court, in that the demand letter is an attempt to alert the potential
defendant of the grievance before suit is filed. 

 The Restatement states the rule to be: 

 An attorney at law is absolutely privileged to publish defamatory matter
concerning another in communications preliminary to a proposed judicial
proceeding, or in the institution of, or during the course and as a part of,
a judicial proceeding in which he participates as counsel, if it has some
relation to the proceeding. 


Restatement (Second) of Torts § 586 (1977). Comment a of this section states:

 The privilege stated in this Section is based upon a public policy of
securing to attorneys as officers of the court the utmost freedom in their
efforts to secure justice for their clients. Therefore the privilege is
absolute. It protects the attorney from liability in an action for
defamation irrespective of his purpose in publishing the defamatory
matter, his belief in its truth, or even his knowledge of its falsity. These
matters are of importance only in determining the amenability of the
attorney to the disciplinary power of the court of which he is an officer. 
The publication of defamatory matter by an attorney is protected not only
when made in the institution of the proceedings or in the conduct of
litigation before a judicial tribunal, but in conferences and other
communications preliminary to the proceeding. The institution of a
judicial proceeding includes all pleadings and affidavits necessary to set
the judicial machinery in motion. The conduct of the litigation includes
the examination and cross-examination of witnesses, comments upon the
evidence and arguments both oral and written upon the evidence,
whether made to court or jury.


Id. at § 586, cmt. a. (emphasis added.)

 Several Texas cases have held the judicial proceeding privilege applies to letters
written by lawyers to potential defendants prior to suit. The first was Russell v. Clark,
620 S.W.2d 865 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.), in which an attorney
was sued for libel for a letter written to the plaintiff's investors. The Dallas Court of
Civil Appeals, writing through Justice Stephens, adopted the Restatement's position
and extended "absolute privilege to out of court communications made by attorneys
preliminary to a judicial proceeding" if the communication has some relation to the
proposed judicial proceeding. Id. at 868­69. The court opined that to trigger the
absolute privilege, there must be a relationship between the correspondence and the
proposed or existing judicial proceeding, which decision is made by considering the
entire communication in context, resolving all doubts in favor of its relevancy. Id. at
870.

 The San Antonio Court of Appeals adopted the same rule of absolute privilege
and held it protected a letter written by a lawyer for a client to a prospective defendant
in a property dispute in Thomas v. Bracey, 940 S.W.2d 340 (Tex. App.--San Antonio
1997, no writ). The Eastland Court addressed the question of tortious interference
based on a letter written by counsel to the operator of a gas well, claiming title to the
gas produced. City of Brady v. Bennie, 735 S.W.2d 275, 279 (Tex. App.--Eastland
1987, no writ). The operator promptly shut down the well. Citing the rule stated in
Reagan v. Guardian Life Ins. Co., that communications made in the course of a judicial
proceedings are absolutely privileged, and that the privilege extends to communications
made in contemplation of a judicial proceeding, citing James v. Brown, 637 S.W.2d
914 (Tex. 1982), the court held that the letter was written preliminary to a proposed
judicial proceeding and was, therefore, absolutely privileged.

 The statements contained in Smith's demand letter were factual allegations and
legal conclusions that formed the basis of her proposed legal action. She was stating
a claim for relief to counsel for Airtron, her anticipated target if she sued for her client. 
The statements in the letter were absolutely privileged, and cannot constitute the basis
for litigation against the lawyer, just as, if suit is filed, the allegations of the petition
cannot be actionable.

 The judgment is AFFIRMED.

 ______________________________

 J. BONNER DORSEY,

 Justice

Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 25th day of May, 2000.