**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed September 10, 2020.**



In The

# 𝕱ourteenth Court of Appeals

---

### NO. 14-19-00677-CV

---

## TN CPA, P.C.; TINA NGUYEN; AND TMW GROUP, LLC, Appellants

## V.

## WENDY B. NGUYEN; MINERVA L. CARIAGA; AND WTN CPAS, PLLC, Appellees

---

### On Appeal from the 281st District Court
### Harris County, Texas
### Trial Court Cause No. 2019-22315

---

### MEMORANDUM OPINION

This is an interlocutory appeal from an order denying a motion to dismiss under the Texas Citizens Participation Act, otherwise known as the "TCPA." For the reasons explained below, we affirm the order in part, reverse the order in part, and remand the case back to the trial court for additional proceedings consistent with this opinion.

# BACKGROUND

This case arises out of the business separation between various accounting professionals.

Tina Nguyen, a certified public accountant, founded TN CPA, P.C., a tax and accounting services company. She later partnered with Wendy Nguyen, another certified public accountant with no familial relationship, and together they formed WTN CPAs, PLLC, which provided additional auditing services.

Tina and Wendy eventually agreed to reorganize their business relationship. The exact scope of that reorganization is disputed, though it supposedly had three components. First, Wendy made a capital contribution to TN CPA with the understanding that she would become a minority shareholder in Tina's corporation. Second, Tina transferred her interest in WTN CPAs to Minerva Cariaga, a new business partner who had more expertise in the types of services that corporation provided. And third, Tina and Wendy partnered with another individual to form TMW Group, LLC, which provided a wider array of consulting services.

These relationships eventually ended because of financial reasons, and with that business separation came several legal claims.

Tina and TN CPA filed the first petition against Wendy and Minerva, asserting causes of action for fraud, conversion, and breach of fiduciary duty, all based on allegations that Wendy and Minerva had forged Tina's signature on certain business documents and checks. Tina and TN CPA further asserted causes of action for tortious interference with contract, tortious interference with prospective relations, and unfair competition, all based on allegations that Wendy and Minerva had begun operating WTN CPAs under the new name of TNC CPA, which was very similar to TN CPA.

Wendy and Minerva filed a counterpetition, which was joined by WTN CPAs, where all three alleged that Tina had breached an oral agreement by filing her original petition. Individually, Wendy also asserted a number of additional counterclaims. Some of those counterclaims had no factual allegations whatsoever. But as for the others, Wendy asserted a counterclaim for breach of contract based on an allegation that Tina had failed to repay a loan. Wendy asserted another counterclaim for defamation based on an allegation that Tina's attorney had sent certain demand letters to Wendy's employees that accused Wendy of having engaged in illegal conduct. And finally, Wendy sought a declaratory judgment and an equitable accounting relating to her ownership interests in TN CPA and TMW Group.

Tina filed a motion to dismiss Wendy's counterclaims under the TCPA, arguing that all of the counterclaims were based on, related to, or were in response to an exercise of the right of free speech or right to petition.[1] Wendy filed a response to the motion to dismiss and amended her counterpetition. Tina replied to Wendy's response. The trial court then signed an order denying Tina's motion to dismiss and granting Wendy an unspecified amount of attorney's fees.

Tina now appeals from that order.

## ANALYSIS

### I. TCPA Burdens

Before a legal action may be dismissed under the TCPA, the movant must satisfy her initial burden of demonstrating by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of

---

[1] Where appropriate in this opinion, we use "Tina" in the singular form to refer to Tina, TN CPA, and TMW Group collectively. We similarly use "Wendy" in the singular form to refer to Wendy, Minerva, and WTN CPAs collectively.

the right of free speech, the right to petition, or the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).[2] If the movant satisfies this initial burden, then the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmovant satisfies that burden, then the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). Whether the parties have met these respective burdens is a question of law that we review de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

## II.     The Defamation Counterclaim

Tina argues in her first issue that the trial court should have dismissed Wendy's counterclaim for defamation. To analyze this issue, we begin with the threshold question of whether Tina proved that the TCPA applies to the counterclaim.

Tina argued in her motion that the counterclaim was subject to the TCPA because Wendy premised the counterclaim on the demand letters to her employees, and according to Tina, those demand letters were an exercise of her right of free speech. To prove that point, Tina had to show that the demand letters were "communication[s] made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3) (defining an "exercise of the right of free speech"). A "matter of public concern" is a broadly defined term under the TCPA, and it includes issues related to "environmental, economic, or community well-

---

[2] There have been amendments to the TCPA, which became effective as of September 1, 2019. In this opinion, all citations to the TCPA refer to the pre-amendment version that was effective at the time that Wendy filed her counterpetition.

being" and "a good, product, or service in the marketplace." *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B), (E).

The demand letters accused Wendy of having engaged in illegal conduct, and to the extent that her employees were assisting in this misconduct, the letters demanded that these employees end their assistance. The letters specifically alleged the following misconduct: (1) Wendy was affirmatively misrepresenting a continuing relationship with TN CPA; (2) Wendy was holding out her business, TNC CPA, as being the same as or affiliated with TN CPA, which was confusing creditors, vendors, and clients of TN CPA; (3) Wendy was misappropriating TN CPA's trade secrets; (4) Wendy was using Tina's electronic signature without Tina's authority; and (5) Wendy fraudulently claimed an ownership interest in TN CPA when she applied to a bank for a loan. These sorts of allegations relate to both community well-being and Wendy's services in the marketplace, which are sufficient to raise matters of public concern. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 895–96 (Tex. 2018) (communications alleging that the nonmovant had engaged in malfeasance and criminality related to both community well-being and services in the marketplace).

Wendy contends that the opposite conclusion is required because the demand letters were just private communications concerning private business disputes. We disagree with this characterization. The demand letters addressed how Wendy conducted her business and how she held that business out to the public. Even though the ultimate disputes between Tina and Wendy are of a private nature, the communications in the demand letters relate to matters of public concern, as that term has been statutorily defined. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B), (E). Also, these communications fall within the scope of the TCPA even though they were not publicly disseminated. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509

5

(Tex. 2015) (per curiam) (holding that the TCPA can apply "regardless of whether the communication takes a public or private form").

Because Tina satisfied her initial burden of showing that the TCPA applies to this counterclaim, the burden shifted to Wendy to establish a prima facie case for each essential element of defamation. We can assume for the sake of argument that Wendy satisfied that burden. The question then becomes whether Tina established a valid defense.

Tina argued in her reply that Wendy could not recover on her counterclaim because it was based on the demand letters, which were protected by the judicial-proceedings privilege. Under this privilege, "communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *See James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982) (per curiam).

This privilege extends to any statement made by the parties or their counsel, even if the statement was not made during a pending case, so long as the statement bears some relationship to a proposed judicial proceeding. *See Landry's, Inc. v. Animal Legal Defense Fund*, 566 S.W.3d 41, 58 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). When, as here, the statement was made before a judicial proceeding was instituted, the statement is privileged only if it meets both an objective and a subjective component. *Id.* Objectively, the statement must be related to the proposed litigation; and subjectively, the proceeding must have been actually contemplated in good faith and under serious consideration when the statement was made. *Id.*

Regarding the objective component, the demand letters bear a clear relationship to Tina's original petition. The demand letters complain about Wendy's alleged use of Tina's signature, which is related to Tina's causes of action for fraud,

6

conversion, and breach of fiduciary duty. The demand letters also complain about how Wendy was conducting WTN CPAs under the name of TNC CPA, which is related to Tina's causes of action for tortious interference with contract, tortious interference with prospective relations, and unfair competition.

As for the subjective component, the record shows that the demand letters were sent to Wendy's employees less than one week after a separate demand letter was sent to Wendy herself. All of the letters were signed by the attorney who filed Tina's original petition. And in the separate demand letter that was sent to Wendy, the attorney raised the same issues that were mentioned in the other demand letters. The attorney also advised Wendy that "this is a serious matter" and that if Wendy did not end her misconduct, "the next communication from our office will be a lawsuit." The attorney filed Tina's original petition three months later. This evidence establishes that a judicial proceeding was seriously contemplated at the time of the demand letters.

Wendy responds that the judicial-proceedings privilege should not apply because the demand letters were not made in the course of a pending judicial proceeding—but as we explained above, the privilege can still apply to communications that occurred even before a lawsuit has begun. *See, e.g.*, *Crain v. Smith*, 22 S.W.3d 58, 62–63 (Tex. App.—Corpus Christi 2000, no pet.) (holding that statements in a demand letter filed before the lawsuit began were protected by the judicial-proceedings privilege). Wendy also contends that the privilege should not apply because the employees who received the demand letters are not parties to this litigation or to any related litigation. This point fails because there is no requirement that the recipients of the communications must also be the litigants. *Id.* (statements in a demand letter sent to a non-party attorney were protected by the privilege);

7

*Landry's*, 566 S.W.3d at 60 (statements made to the press were protected by the privilege).

We conclude that Tina satisfied her burden of establishing a valid defense, and that the trial court erred by failing to dismiss Wendy's defamation counterclaim.

## III.   The Nonsuited Counterclaims

### A.   "Filing Lawsuit Breach"

Tina focuses next on a counterclaim that she has labeled the "Filing Lawsuit Breach." This counterclaim was asserted in Wendy's original petition as one of two causes of action for breach of contract. Wendy pleaded that she and Tina had orally agreed to a certain transfer of business interests, and that Tina had "breached that agreement by initiating this litigation."

Tina addressed this counterclaim in her motion to dismiss. Wendy responded to that issue in the trial court, but her response consisted of just the conclusory statement that the counterclaim was not subject to the TCPA. In conjunction with that response, Wendy nonsuited the counterclaim by omitting it from her amended petition.

Tina now argues that the TCPA applies to the counterclaim and that her motion should have been granted, notwithstanding the nonsuit, as she would have been entitled to additional relief in the form of a dismissal with prejudice and attorney's fees. *See* Tex. Civ. Prac. & Rem. Code §§ 27.005, 27.009. Consistent with that point, our court has previously determined that a motion to dismiss under the TCPA survives a nonsuit because it affords more relief than a nonsuit. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *14 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). We

8

therefore approach Tina's argument by deciding first whether the TCPA applies to the challenged counterclaim.

Tina argued in the trial court that the TCPA applied to this counterclaim because Wendy asserted it in response to Tina's "exercise of the right to petition." That term, as it has been defined under the TCPA, means "a communication in or pertaining to a judicial proceeding." *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(1). That definition was plainly met here. On its face, Wendy's counterclaim is premised expressly on Tina's filing of this lawsuit, which is a communication in a judicial proceeding. This means that Tina satisfied her initial burden, and that the burden shifted to Wendy to establish a prima facie case. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019) (holding that a breach of contract claim premised on the filing of a lawsuit was based on an exercise of the right to petition).

Wendy did not satisfy her burden as the nonmovant. Instead of establishing a prima facie case for the counterclaim, she nonsuited it. On this record, the trial court should have granted Tina's motion to dismiss as to this particular counterclaim. *See Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297 (Tex. App.—Austin 2018, pet. denied) (holding that the movant was entitled to relief under the TCPA where the nonmovant did not present any evidence to support a prima facie case of a nonsuited claim).

### B.    Quantum Meruit and Fraudulent Transfer

Tina's next argument focuses on Wendy's counterclaims for quantum meruit and fraudulent transfer, which were asserted in Wendy's original petition but then nonsuited by omission in her amended petition. As with the previous counterclaim for "Filing Lawsuit Breach," Tina argues that these counterclaims should have been dismissed, notwithstanding the nonsuits.

Tina does not clearly articulate a reason why the TCPA applies to these particular counterclaims. Instead, she groups all of Wendy's non-defamation counterclaims together and concludes that they are subject to dismissal because Wendy asserted them after Tina sent her demand letters and after Tina filed her original petition. This chronological explanation is insufficient. We cannot assume that counterclaims are based on an exercise of the right to petition simply because they are counterclaims. *See Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (holding that some of the counterclaims, but not all of them, were based on an exercise of the right to petition). We first need some sort of factual basis to make that connection. *See Cavin v. Abbott*, 545 S.W.3d 47, 58 (Tex. App.—Austin 2017, no pet.) (holding that the phrase "is based on, relates to, or is in response to" requires a legal action that is "factually predicated" upon an exercise of one of the TCPA's identified rights).

The problem with these two counterclaims is that they were in the class of counterclaims that contained no factual allegations whatsoever. Wendy merely asserted causes of action for quantum meruit and fraudulent transfer without further elaboration, which prompted Tina to dub them the "one-liner counterclaims."

Tina did not specially except to the bare counterclaims or otherwise establish their factual bases. Without some sort of factual context, we conclude that Tina failed to satisfy her initial burden of proving by a preponderance of the evidence that the counterclaims were subject to the TCPA. *See Deaver v. Desai*, 483 S.W.3d 668, 674 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that the movant had failed to satisfy his initial burden of proving that a bare claim was subject to the TCPA).

## IV.   The Remaining Counterclaims

Wendy asserted seven additional counterclaims: two were for declaratory judgment, and the remaining five were for breach of fiduciary duty, fraud,

conversion, unjust enrichment, and breach of contract. Unlike with the nonsuited counterclaims, the factual bases for these remaining counterclaims are evident on the face of Wendy's amended petition. Their factual bases are not uniform, however: one concerns Wendy's interest in TMW Group, another concerns a $50,000 loan that Wendy allegedly gave to Tina, and the rest concern a $60,000 contribution that Wendy allegedly made to TN CPA.

Tina argues in her brief that the TCPA applies to all seven of these counterclaims because Wendy asserted the counterclaims in response to Tina's demand letters and lawsuit. But instead of analyzing each of Wendy's counterclaims individually, Tina groups all seven counterclaims together as the "non-defamation counterclaims" and then broadly asserts that they must be dismissed.

Because Wendy's remaining counterclaims are based on different facts, they cannot be lumped together and treated as a monolith. Tina was required to show that each individual counterclaim was based on, related to, or in response to an exercise of the right of free speech or the right to petition. Tina did not do that here. She just made the broad assertion that all of the counterclaims were subject to the TCPA because Wendy filed her counterpetition after receiving Tina's demand letters and lawsuit. This sort of perfunctory analysis is not sufficient because it does not give any due consideration to the different facts of the counterclaims, nor does it demonstrate each individual counterclaim's relationship, if any, to the underlying communications.

Because Tina has not adequately briefed her argument that the TCPA applies to these remaining counterclaims, we conclude that Tina has waived any challenge to this portion of the trial court's ruling. *See* Tex. R. App. P. 38.1(i); *QTAT BPO Solutions, Inc. v. Lee & Murphy Law Firm, G.P.*, 524 S.W.3d 770, 777 (Tex. App.— Houston [14th Dist.] 2017, pet. denied) (concluding that a challenge to the trial

11

court's ruling on a motion to dismiss was waived where the challenging party failed to adequately brief an argument that certain counterclaims were based on, related to, or in response to an exercise of the right of free speech).

## V.     Attorney's Fees

In her final issue, Tina challenges the trial court's award of an unspecified amount of attorney's fees to Wendy, arguing that the award lacks a necessary finding that Tina's motion to dismiss was frivolous or filed solely for purposes of delay. We need not consider this issue. Because we have already determined that Tina is partially entitled to relief on her TCPA motion, the trial court may reconsider the matter of attorney's fees when the case is remanded. *See* Tex. Civ. Prac. & Rem. Code § 27.009 (providing that a successful movant is entitled to attorney's fees); *Fawcett v. Grosu*, 498 S.W.3d 650, 666 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (reversing and remanding the nonmovant's award of attorney's fees after determining that the trial court erroneously denied relief to the movants).

## CONCLUSION

We affirm all portions of the trial court's order, except for the portion that denied Tina's motion to dismiss as to Wendy's counterclaims for defamation and "Filing Lawsuit Breach," and for the other portion that awarded Wendy an unspecified amount of attorney's fees. We reverse those portions of the trial court's order and remand the case back to the trial court for additional proceedings consistent with this opinion.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Jewell, and Hassan.

12